I'm intending to reserve three minutes for rebuttal. In 1986, Congress criminalized sex offenses that occurred in the Special Maritime and Territorial Jurisdiction of the United States and in federal prisons. It wasn't until 20 years later, in 2006, that they amended those statutes to apply to any institution or institution of the United States. where any person is held pursuant to a federal contract with the head of a department or agency. Mujahid's first claim is that those amendments are unconstitutional because they were enacted outside of Congress's powers, unenumerated powers, and outside of the Necessary and Proper Clause. It's a general principle well established that the federal government is a government of limited jurisdiction and it does not have any federal police power or right to enact criminal statutes unless they're specifically linked to an enumerated federal power. In this case, the... Is the case that governs us generally Lopez? Well, I think Lopez is a case that helps us. It certainly is a very important case. I noticed it wasn't briefed by you. You didn't think it was worthwhile? Well, it is listed in my briefs. It was not discussed by you in your brief. I assume you didn't think it was a worthwhile case. I believe I took some quotes out of there, but I analyzed it the way the district court analyzed it. Comstock, in some ways, is the way the district court analyzed it. And I think that under that analysis, the factors weigh in our favor rather than the way the district court analyzed it. Which factor in Comstock, which factors do you believe weigh in your favor? I think in particular, I'd like to highlight three of them that are strongest in our favor, that are lacking in our case, that they relied on in Comstock. One is the long history of federal involvement in the area. In Comstock, the court said that the delivery of mental health services by the federal government went back into the 1850s. Here, in this case, it wasn't until 1986 that the statutes enacted criminal sex offenses on federal property. And it wasn't until 20 years later that they enacted it in state jails or state facilities. And so there's no long federal involvement within a few years. The second factor I think is significant is the state's accommodation of state interest. In Comstock, it was the federal civil commitment statute that specifically said that the federal procedures only apply if they first offer the inmate to the state and let them see if the state would secure their custody or their safe passage out of the federal prison. In this case, the statutes don't have any kind of similar accommodation to the state where they first allow jurisdiction for the states. In fact, the contracts at issue in this case specifically said that the state facilities or the state jails should abide by state laws and local laws and provide for the safe, secure custody of the inmates. And the third aspect that I think is much different than in Comstock is the statutes in Comstock was considered to be a very narrow scope. The state had only applied to approximately 150 inmates. While in this case, the Bureau of Prison Reports says there's over 25,000 inmates in BOP custody that are being held in private, state, and local jails. There's probably additional inmates that are held in immigration custody by state authorities that the statute would also apply to. So those three factors in particular, I think, kind of weigh strongly in our favor. What are the state interests here that are in conflict with the federal interests? Well, I think that the state interest in policing its citizens and people in its jails and outside of its jails, there's no general police power by the feds, and the cases talk about even when there's concurrent jurisdiction, that infringes on the principle of federalism and the state's rights to have their own, create their own criminal laws. But the federal government has an obligation to make sure its prisoners are safe, right? Absolutely. Would your argument differ if this were a situation where there was a federal prisoner had assaulted a federal prisoner? On a basic level, no, because I'm arguing that the statute in its entirety, the amendments are unconstitutional, because Congress did not have the power to enact that. Well, that is my question. Would you still take that position if the situation were a federal prisoner assaulting a federal prisoner? Yes. Because it's in a state facility and the state criminal laws apply there, the state laws would be able to handle that situation. They could take that federal inmate, charge him in state court of assaulting another federal inmate. And I don't think it's any different. So does that mean that because the state would have the ability, is that your argument, because the state would have the ability to prosecute this kind of an offense, that the federal government doesn't have a parallel interest? Well, the federal government has an interest in keeping its inmates safe, but it is beyond the scope of the necessary and proper clause to enact criminal statutes to cover this conduct. And there is a Prison Rape Elimination Act that the federal government takes steps to require the states to report and take steps to keep inmates safe. There is by contract a requirement that the state keep inmates safe, and there are state laws that are covered in all 50 states that would apply to this type of situation. It goes way beyond the federal government's limited powers to enact a criminal statute that infringes on the federalism interest and the dynamic between the state and the federal government. What's your strongest authority? Well, Judge Wallace told me it was Lopez, so I'm going to go with Lopez. Good move. I think Morrison as well, and today, this morning, the Supreme Court came out with a decision in bond. The majority issued it on narrow grounds and a statutory interpretation, but there were three justices that found that the statute was outside the Supreme Court's powers under the necessary and proper clause. What was the statute there? That was a different type of statute. It prohibited the use of chemical weapons, and the majority found that as a matter of statutory interpretation, it did not apply to the specific facts of the case, which was an ex-wife that was upset that her husband was having an affair and took some household products and caused some danger. But there was three concurring opinions that talked about the necessary and proper clause, and three justices said that it concurred on the grounds not in the statutory interpretation, but on the broader grounds it was outside the scope of the treaty. On your Comstock argument, I'm not awfully impressed with the five considerations. At least we've moved from factors to considerations, which makes more sense to me. But do we just count them? I mean, you've got two in your favor and the government's got three in their favor, perhaps. Is that the way we do it? Well, Comstock doesn't say how to count them or what makes the kind of point Your Honor is making, and I believe the dissenting opinion there kind of called them out on that. So it's hard to know exactly what is a distinguishing factor or how different it would be. But I do think that this is a far different statute than the one in effect in Comstock. Yeah. Well, I mean, I have made up my mind, but I think you make a persuasive argument in four and five, but one, two, and three are a little more difficult for you, and I'm just wondering when I start balancing these considerations, whether they're numerical or they're just things I think about and I'll make up my own mind regardless. I don't think there's any, there's no numerical number, and I think it is the totality of the circumstances. But I just assume for sake of argument that three go against you, the first three go against you, and the second two are in your favor. How would you argue that we should accept your position? Well, I would argue that Comstock says that each of those five factors taken together are sufficient to find that the statute was constitutional in that case. If two of the factors are different, it takes you outside of the scope of Comstock, and you look at all the court's necessary and proper clause cases, Lopez, Morrison, et cetera, and that because it is sufficiently different and it does infringe on the state-federal dynamic and the state's sovereignty and interest that the statute should be deemed unconstitutional. Okay. Now, your client filed a pro se motion for a new trial based on his assertion that he actually was not in federal custody, that he was actually in state custody. If he were in state custody and not in federal custody, would the analysis be different? I think on the call to a facial challenge, I think no. On an applied challenge, it may be an even stronger argument. I do want to point out I would disagree with a government's counsel that the same kind of facial applied analysis though applies in cases where you're determining whether or not Congress has a power to enact a statute. The cases cited in Herbree-Stevens had to do with a First Amendment challenge. Salerno had to do with the Bail Reform Act and a due process challenge. And each of the cases, the considerations are different. When the consideration is whether or not Congress had the power to enact a statute, I think you look at the facial versus applied analysis. I'm not sure it applies or it applies in a different way. And Justice Kennedy made this point in Sabree in the concurrence that in Lopez and Morrison, they didn't go through like a facial versus applied analysis. They just looked at whether Congress had the power to enact a statute. But I do want to make clear we are making a general facial challenge to the statute as well as an applied challenge, as they did before in the district court, to a federal inmate in a local county jail like Anchorage Jail where there is primarily state inmates. Can I just ask, is there sufficient evidence that he was in state custody and not in federal custody that we should consider remanding the case? That was Mr. Mujahid's point in his motion for new trial. He was released on bail on state custody, was arrested by both Anchorage police officers and federal agents and put into custody and then charged with a federal felon in possession of a firearm, and they revoked his bail in the state court. It was a little unclear to me from the record in my review of the docket technically whether he was first in state custody or federal custody. Yes, but it's a good point and one that we'd have to consider. The difficulty I have is, unfortunately, the district judge was right. He had no jurisdiction to rule on the issue because of the appeal. And I don't know of a way around that, but it strikes me that that issue is an important one if there were a way of getting to it, but I'm not sure there is. Well, I have a slightly different question about that motion. It was filed at the time. It was filed pro se at a time he was represented, right? Yes. Well, I read the district court's order, the one dated February 10, 2012, as really adopting the reasoning in Bergman, the Bergman case indicating that the court really didn't have a duty to even rule on the motion given that it was filed at a time when he was represented. And I don't think it was refiled. That's true. I think that's right. All right. Thank you. Good morning, Your Honors. I'm Joanne Farrington for the government in this case. Starting out, the constitutionality of the statute is the first issue that's raised by the defendant. And there are two lines of authority from the Constitution that gave Congress the power to act, to criminalize sexual assaults in facilities being held by holding federal prisoners. The first is the analysis relied upon by the district court, that's the Comstock analysis, in which the Supreme Court said that Congress clearly has power to punish individuals who violate federal criminal laws and that as a result of that, through the necessary and proper clause, Congress also clearly has power to maintain prisons, to establish facilities to hold prisoners and to regulate their conduct and the conduct of those coming and going in the prison and so forth. The court did rely on five factors or look to five considerations, as it called it. I think the first two are clearly the most important. The first one is the broad scope of the necessary and proper clause. The court emphasized that again in Comstock that Congress has very broad discretion to adopt legislation that it believes will further its legitimate ends. And clearly protecting the both federal prisoners directly if they are the victims, to punish their federal prisoners if they are the perpetrators, and to maintain a safe and appropriate environment for federal prisoners who are being held under contract, I would suggest that Comstock clearly suggests that it is within the necessary and proper authority of Congress to enact such statutes. Doesn't that read the word necessary out? That's sort of opposing counsel's argument that the state, of course, has criminalized this conduct. It's criminalized in all 50 states. So what's necessary about this? It does, Your Honor, and actually I think that necessary and proper has become essentially a term of art in the law. It doesn't mean that Congress is limited to only what it has to do in order to accomplish its legitimate goals. It has broad discretion to decide what's a good idea and what will advance its goals in pretty much any way. I mean, obviously Congress has to be considerate of the other limitations on its powers, but to the extent that it has a legitimate federal goal and clearly establishing a safe environment for the individuals who are under its responsibility is a legitimate goal of Congress. It's not without limitation, though. It's not without limitation. Have you read the Bond case? I realize that would be asking a lot given the timing. Are you familiar with it? The brand-new one? Yeah. I have not. I'm generally familiar with the facts of that case and what was pending, but I have not read the session. I'm sorry. I haven't had a chance to either. If the court concludes that the Bond case does have anything significant to offer here, I'm sure that co-counsel and myself would be more than happy to further brief it for the court. Right. I have a slightly different question because the basis for the federal government being able to enact laws that govern inmates in state facilities is their contract by which they put federal prisoners, federal custodial prisoners into state institutions. But that contract says the local government agrees to accept and provide for the secure custody, care, and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders. So isn't the statute that retains that very jurisdiction in conflict with the very contract that gives rise to the statute or the reported power to enact the statute? Not at all, Your Honor, because the statute does not usurp the power of the state. The state and the federal government have concurrent power over these issues. This is a very difficult, intractable problem, and the two sovereigns are cooperating together, working together in terms of housing prisoners, and they also cooperate together and work together in terms of trying to deal with this difficult issue in managing their prisons. The federal government is not in the contract. It's specifically saying you state you still have responsibilities here. You may not abdicate your responsibilities in terms of what goes on in the prison, but we also have a responsibility, the federal government, in order to ensure that there is a safe environment for prisoners. In this particular case, we're talking about certain sexual acts. Does the state of Alaska have statutes that govern that? I don't believe it has any statutes that govern that conduct specifically in the context of a prison environment. It does have general sexual assault statutes, as I believe all states have. And this is a citizen of Alaska in an Alaska facility. Why is it necessary and proper if the state can bring the very same attack for the very same crime in its own state, in its own prison, and why is it necessary and proper for us to have a federal statute? Well, as I said, Your Honor, the phrase necessary and proper is to some extent a term of art. It doesn't mean that it's absolutely critical for the federal government to act. It meant that 200 years ago, but it doesn't now. But, okay, then what does it mean? Well, I would like to suggest that there are very many situations where the federal interest and the state interest overlap in terms of conduct, and where there are criminal statutes addressing similar or even identical conduct that an individual is subject to both federal jurisdiction and a state jurisdiction should he or she violate those prohibitions. What's the closest example of that to what we have before us? The drug laws are probably a very good example. The drug laws of the state prohibit in many situations, in fact, I think almost all situations, almost exactly the same conduct that the federal government prohibits. Various gun laws. Robbing a bank is usually a violation of state law as well as of federal law. It's very common for there to be federal criminal statutes that overlap very closely with concurrent state. It's true of regulation of fish and game. To the criminal, to the federal jurisdiction, there has to be a hook of some type. That's right. And the hook that you have here is what? It's the contract with the state prison. And that has to be in existence for us to get to it. It does. Okay. How do you approve a contract? How do you approve a contract? It's a legal document that is introduced into evidence when it was in this case. Did you find anything in the record that a copy of the contract was before the judge? It was, Your Honor. Tell me what that was. Is that the post-verdict ruling? Well, that was the judge's legal ruling. But the contract was introduced in the course of the trial. Okay. I couldn't find it, and it wasn't anything in the briefs that showed it was. It was introduced in the course of Deputy Marshal LeDyke's testimony and her testimony. I read the testimony. Was there an exhibit? I believe so. I'm sorry, Your Honor. I don't have it here in my outline. I believe it is set out in my brief as to the place in the exerted record where the contract was introduced. It was an exhibit introduced by the government, and it was offered into evidence, and it was admitted into evidence without any objection from any time. You agree that that contract is necessary for us to have jurisdiction? Yes. Okay. And could you please, at some time before you leave, give us the exhibit numbers and where I can find it, because I couldn't find it. I certainly can. I'm sorry, Your Honor. I had to hunt as well. And I think Judge Wardlaw is trying to ask the same question. Is it 23, Exhibit 23? It's referred to in the transcript as Exhibit 23, but I don't have it because it's Exhibit 23. And then I have a slightly different question just to complicate your life a little more. Yes. I'll listen while I'm looking. But it may be the effect of my question. So at ER 29 through 30, there's an order entered by Judge Holland, and I'm just trying to figure out the logistics of this. Is it what you're telling us, that there was a witness on the stand, I think one of the marshals, through whom the contract was introduced, and then the government asked for this separate ruling as a matter of law from Judge Holland? From the district court. That's right. And got it. And did this – the date of this order is July 20th. Yes, Your Honor. So when – what's the date of the trial? Is this a post-trial ruling? Yes. Okay. That's what I'm thinking. It was. If I can clarify, Deputy Marshal Ledecky testified during the trial about the existence of the contract, about the fact that there were federal prisoners housed at the ACC, about the fact that Mujahid wasn't a federal prisoner, that she had transferred him back and forth. And she described the contract, which is Government Exhibit 57. It's at Excerpt of Record – no, Government Exhibit 23, Excerpt of Record at 57. I'm sorry. That's okay. The page number for ER was stamped over the Government Exhibit number. Sure. Okay. Government Exhibit 23. So it may have been miscited in the brief. I'm sorry. Exhibit 23 is the contract. That's right. It is the contract. So I have a slightly different question about that. Didn't the district court err by ruling that the Anchorage Correctional Institution was, as a matter of law, subject to the contract and take that question away from the jury? Well, that is the second issue raised by Mr. Mujahid. I don't want to completely lose the spending power analysis. I think you should answer the question that's on the table. I just wanted to remind the Court there's still another issue behind me. Appellate Article 10, Central 1. Yes, answer the question. I will turn now to the second issue raised by Mr. Mujahid, which is that the Court erred by taking the legal question of whether or not the statutory definition of where the conduct had to occur away from the jury, while letting the jury decide the factual question of whether the conduct actually occurred there. That is, I agree, a difficult question, and it's one that I have not been able to reconcile all the precedents in this area. The jury instruction that was in effect at the time, 2010, says whether the crime alleged occurred at a particular location is a question of fact. Whether the location is within the special maritime and territorial jurisdiction of the United States or a federal prison is a question of law. But it doesn't, it seems to me it was probably drafted before the 2006 amendments and not updated with the 2006 amendments. Well, the body of the instruction was updated. It includes, I believe, that language about the contract. But the note that you just read was not and does still only refer to the original language of the 1986 act. I don't see where it refers to the contract. We're talking about 8.164? Yes. The question of whether or not this place was a place within the statutory definition is of the sort that the courts have held are preliminary jurisdictional issues, properly decided as a matter of law by the judge. And the best that I can offer the court to try to make sense of all this is that the elements of a statute traditionally at common law were mens rea, actus rea and causation. But when the federal government acts, it has to have, as you described it, an additional jurisdictional hook. Sometimes Congress puts that jurisdictional hook right into those elements. It describes the defendant has to be a federal officer, the victim has to have FDIC insurance, or the conduct itself, the criminal conduct itself has to be in interstate commerce. And those jurisdictional hooks are part of the elements. And then I have no dispute that in those situations that those questions have to be decided by the jury. But in some cases, Congress offers instead a location as its jurisdictional hook, a preliminary location, typically whether or not it's in the fine jurisdiction of the United States, such places as forts or federal prisons or national parks. Locations of that sort. And those questions are questions that are decided. Even though there may be factual issues bubbling up in resolving that legal question, those questions are decided by the court rather than the jury. Now, this court has put an additional gloss on that and has held in Pravaza that if there is a factual dispute underlying that jurisdictional determination, that that factual dispute also has to be submitted to the jury. But in this case, there was no factual dispute. The evidence was introduced, he was charged in the indictment with the proper jurisdictional language. The evidence as to the existence of that jurisdiction was offered at trial by Deputy Marshal LeDyke. And there was no challenge to it of any sort. There was no cross-examination. There was no challenge to jurisdiction raised whatsoever. Factual or otherwise. I thought he did assert that this was a question of fact to go to the jury. Why I find it troubling is maybe, I find it troubling here because there's some sense that maybe he wasn't in fact being held pursuant to that contract. Maybe he was being held pursuant to the state's own custodial interpretation. There was an objection to the jury not being instructed to find the jurisdictional element. There was no factual challenge to the existence of jurisdiction. There was really nothing for the jury to decide, similar to the situation in Pravaza. At this point, I think you might be able to analogize this kind of question to the question of venue, in which it's a factory that has to be alleged. And if there is a factual challenge to the existence of venue, the jury does have to be instructed and decide it. But if there's no factual challenge raised, the jury is not instructed on venue and doesn't decide that issue. Even if he hadn't been, if the motion hadn't been a pro se motion filed at a time when he was represented by counsel, even if defense counsel had properly raised the question of whether he was being held in state custody, which he may have been, I have a problem with the premise of the argument because it seems to me whether he was held in state custody or not. I don't see any break in the timeline that I put together here that calls into question whether there was ever a time he wasn't also held in federal custody. I believe everything that's in the record at this point indicates that he was, in fact, a federal prisoner. He was arrested the whole time. He was a federal prisoner. Now, that's not, there are no findings of fact on this issue. The judge never considered it, never considered any of the arguments raised. But to the extent there is evidence in the record. So you just say never considered the arguments raised. I'm understanding the argument wasn't raised. Well, he attempted to raise it after, long after the jury. That's the pro se motion I was just referring to. It's 11 and 12, which were admitted at trial. It's the Alaska Department of Corrections documentation about Mujahid, describing him and his status. It characterizes him as a federal prisoner. It's at page 47 of the transcript of the trial on day two. I don't think it's in the excerpt of record, but I can provide it to the court if it needs it. All right, Ken Silva, you're well over your time. Thank you. I just wanted to answer Judge Wallace's question that Exhibit 23, which was introduced at trial in an excerpt of Record 57, was admitted during the Deputy Marshal's testimony. And that's at page excerpt of Record 47. And on the second issue, I would also make the additional harmless error argument that I think a jury could easily, it's the government has a very high burden here. It's the constitutional error standard that they have to prove it's beyond a reasonable doubt that absent the error, the jury would have made that finding. I think it's questionable whether or not those contracts were with the head of a federal agency, which is what the statute requires. The initial contract at page excerpt of Record 57 was by a contracting officer, and each of the amendments that changed the amount were by different program analysts and contracting officers, and there could easily be a reasonable doubt as to whether or not the contract was with the head of the federal agency. I take it that that objection wasn't raised at trial. It was not raised at trial, but they took the issue away from the jury. They asked that that element be presented to the jury, and the judge ruled against them in terms of the jury instruction. The government filed this United States v. Smith case, Judge Trott's opinion. Have you had a chance to read that? Yes. Okay. Judge Trott says, despite the two plain instructional errors, we need not reverse. The failure to instruct on every element of an offense is harmless if the amended element is undisputed. How would you argue that that case doesn't cover what might otherwise look like error? Well, the defense didn't raise any particular objections to the evidence as it came out at trial or make any kind of arguments, but I do think that in terms of harmless error, when you're looking at whether the evidence is undisputed or overwhelming, the argument I just made is a legitimate argument why it could be disputed. At least I'm disputing it on appeal. Just to get you to focus on this particular case, in this case, the Smith case, there was uncontested testimony of Coast Guard Officer George Wilson that he spoke with and saw people on board the OK tape. It was on board was the issue. And so that was undisputed evidence. And so Judge Trott wrote that that's okay, even though it should have been done differently. How would you argue that that doesn't cover this? Because here there is no undisputed testimony that the contract is with the head of a federal agency. Okay. So that's the way you would distinguish Smith? Yes, because the deputy marshal never said the contract was with the head of an agency, and the contract itself never says it's with the head of an agency. Okay. All right. Does anyone have further questions? All right. United States v. Mujahid will be submitted. Yes, very good argument on both sides.
judges: WALLACE, WARDLAW, CHRISTEN